STATE of Minnesota, Respondent,

v.

Gary Lee GRAFF, Appellant.

No. C2–93–503.

Court of Appeals of Minnesota.

Dec. 28, 1993.

Review Denied Feb. 24, 1994.

Hubert H. Humphrey, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Duluth, James B. Florey, Asst. County Atty., Virginia, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., and RANDALL and STONE,* JJ.

## OPINION

RANDALL, Judge.

Appellant Gary Lee Graff was convicted of first degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(h)(v) (1990), and given a 110 month sentence. Appellant was required to represent himself throughout the trial. Appellant argues he was denied his constitutional right to an attorney because the trial court refused his late request for appointment of a public defender. We reverse and remand.

## FACTS

On May 28, 1992, appellant was charged with first degree criminal sexual conduct. At his arraignment on June 2, appellant was told he had the right to an attorney and one would be appointed to represent him if he could not afford one. Appellant told the court he would try to retain private counsel. At an appearance on June 15, appellant was granted a continuance so he could try to retain a private attorney. He was granted another continuance on July 6. Appellant had never formally applied for a public defender at that point. Although no application had ever been made, the record shows the trial court made the statement that appellant "did not appear" to be qualified for a public defender. Appellant did not take issue with that statement as he was still trying to raise money to retain a private attorney.

Appellant was still without a private attorney at a court appearance on July 20. Appellant indicated he was all right with representing himself at that point as he was still hopeful of raising the funds to hire private

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

counsel. The district court appointed standby counsel, but informed appellant that he did not have an attorney/client relationship with standby counsel. The district court questioned appellant briefly about waiving his right to counsel, but appellant did not execute a waiver form.

On August 17, appellant again appeared without counsel. Appellant said he still was trying to raise money to retain a private attorney. The district court again agreed with the state's assertion that appellant was not qualified for a public defender. The record shows again that neither a formal application for a public defender nor a thorough review of appellant's financial circumstances had yet been made. The court scheduled a contested omnibus hearing for September 9. At the omnibus hearing, appellant still had not retained private counsel nor applied for a public defender. He told the district court he was now hoping to liquidate some property so he would have funds to hire a private attorney. The court questioned appellant about his intention to retain an attorney:

THE COURT: I will note for the record the appearance of Mr. Graff on his own behalf * * *.

There have been a number of appearances before * * * where you indicated your intent to attempt to retain private counsel * * * and in the meantime, so we could move the case on in everyone's interests, standby counsel * * * was appointed, and he is here today as required by law.

What's your position today * * *—is it your intent to go forward on your own behalf or are you still attempting to retain counsel * * *?

[GRAFF]: * * * I plan on getting [a private attorney] when I have the money. I will go on today with whatever you are going to do and just see what's going on * * *.

I haven't sold my stuff, Your Honor, to get [a private attorney] here, but when I do, and that will be sooner or later, he will come here * * *. That's the way it looks.

THE COURT: What are your financial circumstances right now?

[GRAFF]: Right now, none, Your Honor. Not a bit. I ain't made a penny in the last two months.

THE COURT: Now, you have at no time * * * requested a public defender, and you have been consistent in your view that you were going to retain your own lawyer. Does that remain your position?

[GRAFF]: It remains my position that I will get a lawyer. * * *

THE COURT: And so you are not here today requesting or claiming you qualify for a public defender; you are saying you are going to go forward today with standby counsel and when you are able, you intend to privately retain [counsel]?

[GRAFF]: Correct, Your Honor.

[STANDBY COUNSEL]: Judge, if I may, I would like to just note for the record, the last time we were here, Mr. Graff had some questions. * * * I have not talked to him, had any phone calls, nor any discussion with him until today. He indicated to me once again, that his desire was to hire * * * [a] private lawyer. Just so [the district court] knows that.

THE COURT: So you have had no other contact at all?

* * * * * *

[STANDBY COUNSEL]: Your Honor, I have never even reviewed the file because Mr. Graff kept the discovery. *[The district court judge who appointed standby counsel] indicated to me that I would not be asking any questions, making any motions, or anything of that nature.* I know what the charge is. I know what the circumstances of the case are, but I do not know the factual basis of the case other than the complaint, because Mr. Graff always has kept the discovery and I never had a copy of it.

(Emphasis added.)

Appellant represented himself at the omnibus hearing. He did not cross-examine the state's witnesses or make any legal arguments. The district court told appellant that his attorney, when he got one, could reopen any omnibus issue. The district court set a trial date and told appellant to make sure his

private counsel would be prepared to try the case on December 1. The district court said:

> If you take the position at some point between now and the trial that you have the right or you qualify for a public defender, I just want to caution you today, * * * it will be a hard sell to me if we get close to a trial, that we should continue the trial because we have a new lawyer involved.

It was agreed that copies of the complaint and discovery materials would be sent to standby counsel, but the *district court confirmed that appellant's standby counsel was not expected to be ready to try the case on December 1st.*

On December 1, 1992, the scheduled first day of trial, appellant advised the trial court that he did not have the money to retain his chosen private attorney. Appellant now made an unequivocal request for appointment of a public defender. Standby counsel reminded the court of his limited status and pointed out that if he were directed to defend appellant, he would need more time to prepare for a felony trial involving the serious charge of first degree criminal sexual conduct. The state's position was that the trial should start on December 1. The trial court denied appellant's request for a public defender:

> [M]y responsibility * * * today is to carefully balance your right to a fair trial and your right to have representation or represent yourself against the right of the state to a fair trial and I have to look at the prejudice, if any, that results to either party * * *.
>
> My decision is the same, whether you are indigent as the law defines it, Mr. Graff, or you are not indigent, because as we speak I don't know if you qualify for a public defender, and I will explain why I don't need to know * * * on the morning of the trial.
>
> I don't know, because one, it isn't an issue if your financial circumstances have changed since you posted a $20,000 bail bond. Maybe they have and I presume maybe they haven't [worsened] * * *, but you have never filled out a financial form for a public defender. I am not being

critical of that. I am just suggesting that the record * * * indicates that it has been, I believe, your good faith intent to retain a lawyer, to decline a public defender, and it's not until today that you have made the request for a public defender and made a claim that, look, one reason why I am requesting it is I can't retain a lawyer, and number two, I just can't afford one, period. * * *

> *       *       *       *       *       *

> Balancing the prejudice to the state by way of not only being prepared for trial, but the prejudice in the form of significant trauma and potential unavailability of a nine year old alleged victim, and balancing that against [the] presence [of] standby counsel and the request on the morning of trial, I am going to deny the request and we will proceed with the trial.

The trial court assured appellant it did not hold it against him that he waited until the day of trial to request a public defender, and stated it believed that appellant had operated in good faith and without intent to stall the trial.

Because his day-of-trial request for a public defender was denied, because he had not been able to retain a private attorney, and because the standby counsel was clearly not able (nor willing) to begin the trial, appellant was forced to represent himself at trial. Appellant was allowed to consult with the standby counsel, but standby counsel told the trial court his ability to advise appellant was hampered by lack of preparation and the fact that he did not receive copies of the complaint and discovery material prior to trial. After deliberation, the jury, on December 4, returned a guilty verdict to two counts of criminal sexual conduct in the first degree and two counts of criminal sexual conduct in the second degree. Through his standby counsel, appellant asked for a new trial on the basis of a violation of his right to counsel. The motion was denied. On December 10, the trial court appointed the standby counsel to serve as appellant's public defender for future proceedings. On January 4, appellant appeared with counsel and was sentenced. This appeal followed.

## ISSUE

Was appellant denied his constitutional right to counsel?

## ANALYSIS

■ A criminal defendant has a constitutional right to "assistance of counsel for his own defense." *State v. Fagerstrom,* 286 Minn. 295, 298, 176 N.W.2d 261, 264 (1970) (citing U.S. Const. amends. VI and XIV; Minn. Const. art. I, § 6). The right to counsel includes the fair opportunity to secure counsel of the defendant's own choice. *Id.* at 298, 176 N.W.2d at 264. Throughout the proceedings, appellant indicated he wanted to be represented by an attorney. He thought he could .arrange financing for a private attorney, but failed to do so.

This case was never a *"Richards"* case. *See State v. Richards,* 456 N.W.2d 260 (Minn. 1990) (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). In *Richards,* the defendant had a court-appointed counsel throughout his first trial, and successfully appealed on the basis that he had wanted to appear pro se and argued the trial judge denied his clear and unequivocal waiver of counsel. *Id.* at 262–64. Appellant has never made an unequivocal waiver of his right to counsel. On the preliminary court appearances when he was content without representation, the record is clear that appellant was only temporarily representing himself while he continued to try to raise funds for a private attorney.

At no time did the trial court go through a thorough examination with appellant covering all the required topics for a valid unequivocal waiver of counsel. *See State v. Rubin,* 409 N.W.2d 504, 506 (Minn.1987). The record shows the trial court agrees appellant has never knowingly and intelligently waived the right to counsel nor did he, at trial, demand the right to appear pro se. The record shows exactly the opposite. At trial appellant demanded his right to a public defender. Appellant's request was decidedly untimely, but the right remained.

The record shows that the trial court, which was cooperative and courteous to appellant in his requests for early continuances to retain private counsel, decided straight-

forwardly on December 1 that he would neither appoint a public defender nor consider any request for a continuance. This decision had the practical effect of forcing appellant, a layman, to represent himself on an extremely serious felony charge. That result cannot be justified by the presence of a standby counsel standby counsel conceded he was unprepared to try the case on December 1 and the trial court knew that. Thus, on December 1, the record discloses the bizarre anomaly whereby the trial court, realizing it could not require standby counsel to represent appellant because of lack of preparation, required appellant, as unprepared for trial as standby counsel, *and* without the legal education and training the standby counsel possessed, to go forward as his own attorney. There is no explanation of how appellant, totally unskilled in the defense of felony cases, and never told that he would be representing himself at trial, was expected to be able to adequately represent himself when the court conceded that standby attorney, one familiar with defending felony cases, could not.

Upon conclusion of the trial, the court appointed appellant a public defender for future proceedings. Apparently appellant quickly qualified for a public defender following trial. Simply put, the appointment came too late to save the conviction.

■ Defendants who choose to appear pro se during the process of a criminal charge, have an absolute right to change their minds and request a court-appointed attorney. *State v. Parson,* 457 N.W.2d 261, 263 (Minn.App.1990), *pet. for rev. denied* (Minn. July 31, 1990). In fact, a trial court must appoint standby counsel for indigent defendants even when they start out wanting to proceed pro se. Minn.R.Crim.P. 5.02, subd. 1; *State v. Lande,* 376 N.W.2d 483 (Minn.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986). At any time, a pro se defendant can request standby counsel to render assistance, or take over the entire defense. *Parson,* 457 N.W.2d at 263. Appellant's day-of-trial request was decidedly untimely, but some reasonable continuance or other accommodation with the sixth amendment should have been considered.

The record is never entirely clear why appellant's standby counsel was limited from the start by the court telling him that he would not formally have appellant for a client and was not expected to prepare for trial. A standby counsel is entitled to the opportunity and the preparation time in case the defendant requests standby counsel to take over the defense.

The trial court cited its appointment of standby counsel for appellant as a factor when it refused appellant's request for a public defender. But when appellant attempted to turn the case over to standby counsel, he could not start the case that day as he was not prepared to do so. The trial court acknowledged that lack of preparedness. Yet, the trial court required appellant, less skilled than an unprepared standby counsel, to represent himself. The appointment of this limited standby counsel who was told not to prepare to try the case, cannot be the constitutional vindication of appellant's right to the effective assistance of an attorney in a felony case.

At oral argument, attorneys for both parties conceded that they could never recall a case where, in a major felony trial (assuming no *Richards* issue involved), there was not an attorney of record for the defendant on the day of trial! The system broke down starting in September when appellant, appearing alone at a September 9 hearing, was told that his trial would start December 1st. The prosecuting attorney should have insisted that somehow an attorney of record for appellant be located well before December 1st so he would have someone to serve discovery on and to work with on the normal pretrial matters that come up. Appellant shares much of the blame for not telling the court between September 9 and December 1 that he was financially unable to hire a private attorney and would be wanting a public defender. But, although appellant was negligent and careless of his rights, the concepts of due process, fair trial, court-appointed attorneys, standby counsel, ability to try a case pro se, et cetera, and all the other matters that are raised here, are artificial and unknown concepts to lay persons. The judiciary has to shoulder the burden to protect accused criminal defendants from their own ignorance.

At the September hearing, where the December 1st trial date was set, it would have been proper for the trial court to select a date a few weeks away and tell appellant he would either have to have his private attorney by that date, or a public defender *would be* appointed with some reasonable reimbursement to the public defender's fund worked out later. If that would have been done, the public defender appointment which followed the guilty verdict, would have happened in October, and we would not have this appeal.

We recognize the frustration the trial court felt when appellant, who had not contacted the court between September 9 and December 1, the first day of the scheduled trial, came to trial with the information that he could not afford a private attorney and now wanted to have a public defender. But the fundamental constitutional right of counsel in a felony case guaranteed by the sixth amendment and the Minnesota Constitution make allowance for negligent and careless defendants, as well as defendants who cooperate in seeking that right.

The trial court expressed a concern over the emotional state of the alleged victim if there was to be a continuance past December 1. That subjective concern does not begin to overshadow the unequivocal guarantee of an indigent's right to an attorney in a felony case. First of all, victims of all ages can be somewhat traumatized by having to appear and testify at trial. The state has the power to easily negate the possibility of any trauma from testifying. It can choose either to not charge out the case, or not call the victim as a witness (which will have about the same effect as not charging it out in the first place). However, this is neither a desirable nor a practical solution. The state is going to charge out crimes when they feel they can make the case, and the state does so anticipating they will be calling the victims to testify. There is a certain unavoidable amount of emotional trauma in criminal law. The crime produces some, and the subsequent trial produces some. Crimes and

criminal trials are not pretty or nice, and cannot be made so.

Trying appellant, after allowing a public defender reasonable time to prepare for the case, would have affected the victim less than now having to go through the trial twice because the first trial was fundamentally flawed. We are compelled to reverse and remand appellant's conviction.

### DECISION

A criminal defendant's right to counsel is fundamental to a fair trial. An indigent defendant can request appointment of counsel at any stage of the proceedings. Under the facts of this case, forfeiture of appellant's right to request appointed counsel, and requiring him to represent himself in a major felony case, is too steep a price for appellant's lack of diligence by waiting until the day of trial to request appointed counsel. The record does not disclose any clear and unequivocal waiver of appellant's constitutional right to an attorney in criminal felony proceedings, and we find none.

We reverse appellant's conviction and remand for a new trial.

**Reversed and remanded.**