*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1861**

State of Minnesota,
Respondent,

vs.

Abel Gonyamonquah Miamen,
Appellant.

**Filed November 7, 2016
Affirmed
Smith, Tracy M., Judge**

Ramsey County District Court
File No. 62-CR-15-3602

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Samuel J. Clark, St. Paul City Attorney, Steven E. Heng, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Appellant Abel Gonyamonquah Miamen challenges his conviction for attempting to violate a domestic abuse no-contact order. On appeal, Miamen argues that the district

court failed to conduct a searching inquiry to determine whether exceptional circumstances warranted the appointment of substitute counsel and that the district court abused its discretion in denying his request for a continuance to hire a new attorney. Because Miamen's complaints did not constitute serious allegations of inadequate representation, the district court did not abuse its discretion in denying substitute counsel without further inquiry. Nor did the district court abuse its discretion in denying Miamen's request for a continuance. We affirm.

## FACTS

Miamen was charged with violating a domestic abuse no-contact order on March 21, 2015, and counsel was appointed for him. Miamen appeared with his appointed counsel at pretrial hearings and received a continuance on June 29 to delay the start of trial by one day. The following day, just before the start of his trial, Miamen told the district court his appointed counsel was not sufficiently communicating with him and had not subpoenaed certain witnesses that Miamen suspected would help his case:

> MR. MIAMEN: Well, my only concern was, Your Honor, was my attorney not being able to communicate with me as well as I thought she will, as far as the plan about how we're going to go about this case, and witnesses we're supposedly supposed to subpoena to come to court. You know, I feel like she hasn't handled none of that.
>
> I feel like I don't even know how she's going about this whole case from plan A to plan B. I feel like I'm just walking in, basically I'm just sitting down as a client to the court, Your Honor. So that was my major concern even though that's where me and [my appointed counsel], we don't see eye to eye, you know, and I feel like if I feel like somebody's helping out my—something that will help this court in my situation, then we should, you know, maybe apply it to this situation.

And she tells me: No, we're not going to do that. Okay, well what evidence are we coming in from my behalf in this matter. You understand me? So, yeah, that was one of my major concerns.

The district court informed Miamen that he could discharge his appointed counsel, but warned him that he would have to represent himself at trial. The district court characterized Miamen's concerns as a disagreement with some of appointed counsel's tactics. He reassured Miamen that his appointed counsel had been trained, went to law school, and was licensed by the state of Minnesota as an attorney. He then denied Miamen's request for a continuance to hire private counsel because the case was set for trial that day.

Miamen declined to represent himself and chose to have his appointed counsel represent him at trial. Following trial, the jury convicted Miamen of attempting to violate a domestic abuse no-contact order.

Miamen appeals.

## D E C I S I O N

**I. The district court did not abuse its discretion by failing to conduct a searching inquiry.**

Miamen contends that the district court committed reversible error by failing to conduct a searching inquiry to determine whether exceptional circumstances warranted appointment of substitute counsel. We review the decision to grant or deny a request for substitute counsel for an abuse of discretion. *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006).

Both the United States Constitution and the Minnesota Constitution guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. A criminal defendant does not have the "unbridled" right to choose his or her counsel and must generally accept the court's appointed counsel. *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970). Nor does a defendant have a right to a "meaningful relationship" with appointed counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S. Ct. 1610, 1617 (1983).

If the defendant "voices serious allegations of inadequate representation," the district court should conduct a "searching inquiry" to determine whether the situation warrants appointing substitute counsel. *State v. Munt*, 831 N.W.2d 569, 586 (Minn. 2013) (quoting *Clark*, 722 N.W.2d at 464). A district court will grant a request for substitution of counsel only if "exceptional circumstances exist and the demand is timely and reasonably made." *Id.* (quoting *State v. Worthy*, 583 N.W.2d 270, 278 (Minn. 1998)). Exceptional circumstances are those that "affect a court-appointed attorney's ability or competence to represent the client." *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001). General dissatisfaction with appointed counsel does not rise to the level of exceptional circumstances. *Munt*, 831 N.W.2d at 586.

Miamen argues that the district court should have inquired further into his concerns to ascertain whether exceptional circumstances justified appointment of new counsel. The state responds that Miamen's allegations were statements of general dissatisfaction that did not amount to exceptional circumstances requiring further inquiry.

4

We conclude that Miamen's complaints did not rise to the level of allegations of inadequate representation requiring further inquiry. Miamen complained about his appointed counsel's lack of communication about trial strategy and her alleged unwillingness to subpoena certain witnesses. He complained that he and his counsel "don't see eye to eye." The district court characterized Miamen's complaints as amounting to a disagreement regarding trial tactics. While allegations of disagreement on significant matters of tactics or strategy may require further inquiry when they suggest inadequate representation by counsel, *Clark*, 722 N.W.2d at 464, Miamen's complaints did not fall in that category. Neither the alleged lack of communication about trial strategy nor counsel's alleged unwillingness to subpoena certain unidentified witnesses related so fundamentally to the case that it amounted to a serious disagreement regarding trial tactics. Furthermore, Miamen's allegations did not suggest that the attorney-client relationship was so tainted that his appointed counsel no longer possessed the ability or competency to work with Miamen. Because Miamen did not voice serious tactical disagreements or other allegations of inadequate representation amounting to exceptional circumstances, the district court did not abuse its discretion in not inquiring further into Miamen's complaints. *Id.*

Miamen also argues that the district court misstated the law by telling him that substitute counsel was not an option. In responding to Miamen's concerns, the district court limited Miamen's options to self-representation or continued representation by the present appointed counsel. This court has previously held that it is not a misstatement of law to tell a defendant that substitute counsel is not an option when, as here, there was no showing of exceptional circumstances. *State v. Clark*, 698 N.W.2d 173, 178 (Minn. App.

5

2005), *aff'd*, 722 N.W.2d 460 (Minn. 2006); *see also State v. Lamar*, 474 N.W.2d 1, 3 (Minn. App. 1991) (concluding that telling the defendant that "he could not have a different public defender under any circumstances" was harmless because the defendant failed to demonstrate improper representation), *review denied* (Minn. Sep. 13, 1991). Because no exceptional circumstances existed in the present case, the district court properly excluded references to substitute counsel. *Id.*

Because Miamen's concerns reflected general dissatisfaction with his appointed counsel, the district court did not err in not conducting a searching inquiry and did not abuse its discretion in refusing to appoint substitute counsel. *Munt*, 831 N.W.2d at 586.

**II.    The district court did not abuse its discretion by denying Miamen's request for a continuance.**

We turn now to Miamen's argument that the district court abused its discretion by denying his request for a continuance in order to permit him time to hire a new attorney. We review a district court's decision to grant or deny a motion for continuance for an abuse of discretion. *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987). We examine the circumstances at the time the defendant made the motion to determine whether the district court's decision prejudiced the defendant by "materially affecting the outcome of the trial." *State v. Turnipseed*, 297 N.W.2d 308, 311 (Minn. 1980). "A defendant may not obtain a continuance by discharging his counsel for purposes of delay or by arbitrarily choosing to substitute counsel at the time of trial." *Fagerstrom*, 286 Minn. at 299, 176 N.W.2d at 264 (1970).

Miamen argues that the district court abused its discretion by denying the continuance because it neither provided a reason for denying the continuance nor inquired how long Miamen would need to find a new attorney. The state counters that Miamen's request was untimely.

The Minnesota Supreme Court has rejected claims that a district court abused its discretion for denying a motion for continuance when the defendant made the motion shortly before trial in an effort to find new counsel. In *State v. Worthy*, the supreme court held that the district court did not abuse its discretion when it denied a motion for a continuance a few days before trial because the defendant did not have good cause to dismiss the court-appointed attorney. 583 N.W.2d at 278. Similarly, in *State v. Vance*, the supreme court held that there was no abuse of discretion where the defendant made a motion for a continuance a few days before trial and where the public defender was competent. 254 N.W.2d 353, 358-59 (Minn. 1977). Finally, in *State v. Ahearn*, the supreme court held that the district court did not abuse its discretion in denying a continuance where defendants had "no substantial basis" for "dissatisfaction" or "distrust" with their appointed counsel. 292 Minn. 449, 450, 194 N.W.2d 256, 256 (1972).

The facts in this case resemble those in *Worthy*, *Vance*, and *Ahearn*. On the first day of trial, Miamen requested a continuance to hire new counsel. Although he had previously appeared for an omnibus hearing on June 8, 2015 and received a continuance on June 29, Miamen had not expressed on the record any desire to hire a new attorney until the day of trial on June 30. The district court denied his request for a continuance because a continuance would further delay the trial, concluding, effectively, that Miamen's request

was untimely. Furthermore, Miamen presented no substantial basis—other than general dissatisfaction with his appointed counsel's chosen tactics—for hiring new counsel. We therefore hold that the district court did not abuse its discretion in denying Miamen's request for a continuance. *Rainer*, 411 N.W.2d at 495.

**Affirmed.**